[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10405
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00110-CV-MHS-1

GREGORY ARTHUR SMITH,

Plaintiff-Appellant,

versus

MARCIA GREENLEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 14, 2008)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Gregory Smith appeals the grant of summary judgment against him in this

civil rights action.  We affirm.

## I.

Smith was convicted of forcible rape in California 1983, served three years of a six year sentence, and was paroled in 1986.  Upon his release from prison he was informed that California law required him to register as a sex offender with the appropriate law enforcement agency for the rest of his life, whether he lived in California or elsewhere.  Smith moved to Georgia in 1991, his parole having expired in 1989.  In 1997, Georgia amended its prior sex-offender registry statute, which had not previously required Smith to register.  After the 1997 amendment, a person required to register as a sex offender under the law of another state where he was convicted is now also required to register in Georgia when he "changes residence" from another state to Georgia, regardless of the date of conviction.  See Ga. Code § 42-1-12(e)(6).  As the district court noted, it appears this provision on its face may not require Smith to register (because he did not change his residence to Georgia after the amendment), but Georgia authorities apparently thought it did.  Smith was not registered as a sex offender at all pertinent times.

In June 1998, California's Sex Offender Registration program notified the Georgia Bureau of Investigation that Smith was living in Georgia and was obligated to register there as a sex offender.  The GBI mailed a notification to

Smith's last known address in June 1999 stating that he was required to register and would be arrested if he did not do so. The letter elicited no response. GBI then notified the Gwinnett County Sheriff's office of the situation. In March 2002, Sgt. Pirkle of the Gwinnett Sheriff's office sent Smith another notice that he was required to register. Like the GBI, she received no response. Pirkle then obtained an arrest warrant for Smith, charging him with failure to register as a sex offender. Charges were later dismissed because the limitations period had expired. See Ga. Code § 17-3-1(b)-(c) (limitations periods).

On June 20, 2003, the GBI sent Smith another letter via certified mail, this time to an address in Fulton County, stating that he had to register as sex offender. That letter was returned as undeliverable. (In fact, it appears Smith previously resided in Fulton County but moved to Norcross in Gwinnett County in 2002.) In July 2003, the GBI notified appellee Sgt. Marcia Greenlee of the Fulton County Sheriff's Office that Smith was required to register by June 30, 2003. It also informed her of the outdated address and asked her to obtain a current address for Smith if and when he came in to register. About two months passed after the June 30, 2003 deadline and Smith still had not registered. At some point in late August or early September 2003, Greenlee procured a warrant for Smith's arrest. The parties dispute the circumstances under which Greenlee obtained the warrant. The

3

arrest warrant and supporting affidavit are pre-printed forms with blanks for officers to fill in, each form occupying one half of the same sheet of paper. The affidavit occupies the top half. The affidavit for Smith's arrest is signed by Greenlee and by a deputy clerk, who wrote that the affidavit was "sworn and subscribed to me" on September 2, 2003. In contrast, the arrest warrant is signed by a magistrate and dated August 28, 2003. Smith urges that this discrepancy in dates would permit a jury to infer that Greenlee did not contemporaneously affirm the supporting affidavit under oath. This inference, he argues, would further permit a jury to infer she knew the affidavit to be false, or at least was reckless with respect to its truth.

Greenlee made efforts to locate Smith and arrest him. She contacted Pirkle at the Gwinnett Sheriff's office, stated that Smith was a sex offender required to register and had not done so, and asked whether Pirkle had a current address. Pirkle stated that she remembered Smith from his previous arrest for failure to register, but did not inform Greenlee that the prior charges had been dismissed. She did inform Greenlee of Smith's then-current address, which was in Gwinnett County. Pirkle then obtained a new arrest warrant for Smith in Gwinnett County. Smith was located and arrested that same day, October 27, 2003, and detained in Gwinnett County. His Fulton County arrest warrant was still outstanding. Despite

a bond hearing and a civil action for false imprisonment, Smith remained incarcerated in Gwinnett County for over a year. He was discharged from Gwinnett County January 27, 2005, after dismissal of the failure to register charges (again, because the statute of limitations had expired). However, because of the outstanding Fulton County warrant, Smith was transferred to its custody rather than released. Smith was finally released on January 31, 2005 after the Fulton County charges were also dismissed. Upon his release, Smith was informed that he was, in fact, not required to register as a sex offender.

This suit against Greenlee followed. The essence of the complaint is that Greenlee violated the Constitution in obtaining the arrest warrant from a Fulton County magistrate. That failure in turn led to Smith's allegedly unlawful arrest and his prolonged detention. The district court granted summary judgment in favor of Greenlee, which we now review de novo.

## II.

Smith brings his claim under 42 U.S.C. § 1983. That statute creates no substantive rights; instead, it provides a remedy for deprivations of rights secured by the Constitution or laws of the United States. See, e.g., City of Hialeah v. Rojas, 311 F.3d 1096, 1103 n.1 (11th Cir. 2002). Smith argues that a reasonable jury could find Greenlee's execution of the affidavit in support of the arrest

warrant violated his Fourth and Fourteenth Amendment rights in three ways. First, he contends the affidavit supporting his arrest warrant was unsworn, in violation of the Fourth Amendment's requirement that "no warrants shall issue, but upon probable cause, supported by Oath or Affirmation." Second, he contends Greenlee recklessly failed to investigate the factual basis for the arrest articulated in the affidavit, and third, that she recklessly omitted material, exculpatory facts from the affidavit, resulting in an unreasonable seizure in violation of the Fourth Amendment.[1]

We first address Smith's argument that the record would permit a jury to conclude that Greenlee violated the Fourth Amendment's oath or affirmation requirement. Smith is correct that the record creates a genuine dispute of fact concerning the circumstances under which the warrant issued. The warrant for Smith's arrest was issued August 28, 2003. Greenlee testified in her deposition that before the warrant issued, she affirmed the contents of her supporting affidavit under oath before the magistrate. In response, Smith points to the deputy clerk's signature, which states that Greenlee appeared and swore to the affidavit on

---

[1] An arrest is a quintessential "seizure" within the meaning of the Fourth Amendment and is therefore within that Amendment's reasonableness requirement. McClish v. Nugent, 483 F.3d 1231, 1238 (11th Cir. 2007) (citation omitted). An arrest in a public place need only be justified by probable cause, but an arrest in the home must be authorized by a warrant to satisfy the Fourth Amendment. Id. It is unclear from the summary judgment record whether plaintiff was arrested in his home or elsewhere. For purposes of reviewing summary judgment against Smith, we will assume he was arrested at home.

6

September 2, 2003, some five days later. Smith argues that the discrepancy between Greenlee's statement and the clerk's signature date creates a triable issue of fact concerning whether and when the affidavit was subscribed to under oath.

We agree that there is a factual dispute, but we agree with the district court that it is immaterial. At the outset, it is important to characterize the constitutional right Smith asserts. Smith appears to argue that that he has an independent constitutional right, quite apart from the right to be free from unreasonable seizures, to not be arrested pursuant to an unsworn warrant, even if probable cause exists and the magistrate clearly would have issued the warrant had the testimony establishing probable cause been presented under oath. Assuming without deciding such a right exists under the Fourth and Fourteenth Amendments, no reasonable jury presented with this record could conclude it has been violated because Smith was arrested on sworn warrant. The deputy clerk's signature on the affidavit might permit a jury to infer that the arrest warrant was not affirmed under oath until September 2, rather than August 28. But Smith does not argue that the September 2 signature and date of the deputy clerk is forged or inauthentic. Given this concession, Greenlee's testimony that she affirmed the affidavit under oath, and Smith's failure to produce contrary evidence, no reasonable trier of fact could conclude that the warrant was *never* subscribed to under oath. And Smith was not

7

arrested until October 27, well after the warrant was affirmed under oath on (at the latest) September 2.[2]  Hence, Smith was not arrested on an unsworn warrant, and therefore he has proven no violation of the Fourth Amendment.

Smith next argues that Greenlee violated his constitutional rights by failing to do an adequate investigation before obtaining the arrest warrant or by omitting exculpatory information from the affidavit.  "[A] police officer violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth."  Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994).  Likewise, an officer must conduct a constitutionally sufficient investigation before making an arrest.  See, e.g, Kingsland v. City of Miami, 382 F.3d 1220, 1228-30 (11th Cir. 2004).  While officers may not ignore exculpatory information of which they are actually aware in deciding whether to arrest, they need not explore every proffered claim of innocence.  Id.

Smith concedes that Greenlee did not know that charges stemming from his prior arrest for failure to register had been dismissed as untimely at the time she sought the arrest warrant.  Thus, Smith argues that Greenlee should have known about the prior dismissal.  The essence of Smith's argument is that Greenlee acted unreasonably in taking GBI's word that Smith was a sex offender living in Fulton

_____

[2] We also note that the discrepancy in dates is likely a clerical error of no constitutional significance.

8

County and subject to registration requirements. He contends that a constitutionally adequate investigation would have required Greenlee to check computerized criminal-history databases such as the NCIC, which would have revealed that the prior charges had been dismissed as untimely. The failure to investigate and discover this exculpatory information (and reveal it to the magistrate), he argues, rendered her pre-arrest investigation constitutionally unreasonable. We disagree. Greenlee acted reasonably in relying on the GBI's information. At the pertinent times, the GBI was statutorily charged with providing the conviction data (including names and fingerprints) of persons required to register as sex offenders to local sheriffs, who in turn were charged with maintaining a list of their names and addresses. See Ga. Code§ 42-1-12(c) (2003). GBI indicated to Greenlee that Smith was required to register as a sex offender (a fact Greenlee was in no position to dispute) and that he was last known to be living in Fulton County. Greenlee verified that Smith had not provided his address to the Fulton County sheriff. That provided her sufficient probable cause to seek Smith's arrest.

Further, the record is clear beyond dispute that Greenlee's reliance on information from the GBI and local databases was the typical method by which law enforcement enforced the sex offender registration laws and was, indeed, a

reasonable investigation. To form the basis for probable cause, information need only be reasonably trustworthy and of a type which would induce a prudent person to believe an offense had been committed. Kingsland, 382 F.3d at 1231 n.11. The information Greenlee relied upon undoubtedly meets that standard.

Smith urges that because GBI's 1999 notice to Smith was returned as undeliverable, Greenlee lacked proof that Smith lived in Fulton County. But even assuming Greenlee was aware of that fact, GBI listed Fulton County as Smith's last known address. Further, were Smith required to register as a sex offender, as the pertinent officials reasonably but (apparently) erroneously believed he was, he would be required to notify authorities of any change in his address. In the absence of other information about Smith's whereabouts, the GBI's notification and the absence of any reported change of address together were sufficient to form a reasonable belief that Smith continued to reside in Fulton County.

In short, Greenlee conducted a reasonable investigation before seeking an arrest warrant, and that investigation revealed probable cause for the arrest. Any reasonable jury would be compelled to so conclude. Accordingly, we **AFFIRM** the district court's judgment.